# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YOUNG OK KEPILINO,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General,

Respondent.

No. 04-71926

Agency No.
A76-599-298

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 16, 2006—Honolulu, Hawaii

Filed July 25, 2006

Before: Betty B. Fletcher, Harry Pregerson, and
Cynthia Holcomb Hall, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Gary S. Singh, Honolulu, Hawaii, for the petitioner.

Blair T. O'Connor, (argued), Deputy Attorney General, and Anthony W. Norwood, (briefed), Deputy Attorney General, Washington, D.C., for the respondent.

**OPINION**

PREGERSON, Circuit Judge:

Petitioner Young Ok Kepilino appeals the Board of Immigration Appeals's ("BIA") summary affirmance of the Immigration Judge's ("IJ") decision finding Kepilino inadmissible under section 212(a)(2)(D)(i) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1182(a)(2)(D)(i)). The IJ held that Kepilino's 1999 prostitution conviction under Hawaii Revised Statute ("H.R.S.") section 712-1200 rendered her inadmissible under section 212(a)(2)(D)(i) of the INA, which renders inadmissible any alien who "is coming to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjustment of status." 8 U.S.C. § 1182(a)(2)(D)(i). Kepilino contends that her Hawaii prostitution conviction does not trigger section 212(a)(2)(D)(i) because Hawaii's definition of prostitution is overly broad and "has gone far beyond the well-accepted and understood meaning of prostitution." This issue is one of first impression in the Ninth Circuit.

We have jurisdiction under 8 U.S.C. § 1252. Because we agree with Kepilino that Hawaii's definition of prostitution encompasses acts outside the scope of section 212(a)(2)(D)(i), we grant Kepilino's petition.

## I.   Factual and Procedural Background

Kepilino is a native and citizen of South Korea. She first entered the United States as a visitor for pleasure on or about November 4, 1996. Kepilino married a U.S. citizen and adjusted her status on July 8, 1998. She received a temporary Form I-551 resident alien card valid from July 8, 1998, through January 31, 2004. On January 7, 1999, Kepilino was arrested and charged with practicing massage without a license under H.R.S. section 425-0015 and prostitution under

H.R.S. section 712-1200. On March 2, 1999, Kepilino pleaded no contest to both charges.

On December 8, 2002, Kepilino arrived at the Honolulu International Airport after a brief trip to South Korea to visit her ailing father. She applied for admission as a returning temporary resident alien. Kepilino was interviewed on arrival and admitted that she had been convicted of prostitution under H.R.S. section 712-1200. The Department of Homeland Security did not admit Kepilino but instead charged her with being inadmissible under section 212(a)(2)(D)(i) of the INA as an alien coming to the United States to engage in prostitution or who has engaged in prostitution within ten years of application.

On June 13, 2003, an IJ found Kepilino inadmissible based on her 1999 Hawaii state conviction for prostitution. The IJ noted that the INA does not provide a definition of "prostitution" but found that a conviction under the Hawaii statute was sufficient to establish that Kepilino was inadmissible under section 212(a)(2)(D)(i) and ordered that she be removed to South Korea.[1] On March 29, 2004, the BIA affirmed the IJ without opinion.

## II.   Standard of Review

We review *de novo* whether a state law conviction renders an alien inadmissible under federal immigration law. *See*

---

[1]The IJ also noted that there was no alternative relief available to Kepilino:

> [Kepilino] does not have sufficient time as a permanent resident to qualify for cancellation of removal for certain permanent residents, since she only became a permanent resident on July 8, 1998. [Kepilino] does not have a visa petition, and appears not to be qualified for a Section 212(f) waiver of inadmissibility for lack of sufficient time of seven years. [Kepilino] does not have any fear of returning to her homeland, and has not filed an application for asylum. [Kepilino] has not applied for naturalization.

*Lara-Cazares v. Gonzales*, 408 F.3d 1217, 1219 (9th Cir. 2005). When, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision as the final agency action. *See Altamirano v. Gonzales*, 427 F.3d 586, 591 (9th Cir. 2005). We "review purely legal questions concerning the meaning of the immigration laws *de novo*." *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir. 2004). As Kepilino offers no objections to the IJ's findings of fact, this case presents a legal question that we review *de novo*. *See Shivaraman v. Ashcroft*, 360 F.3d 1142, 1145 (9th Cir. 2004).

## III. Burden of Production

Kepilino's possession of a valid Korean passport and immigrant visa issued by South Korea is *prima facie* evidence that Kepilino is admissible to the United States. *See Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1212 (9th Cir. 2002). In light of this evidence, the burden shifted to the Government to produce "some evidence" to show that she was not admissible. *Id.* at 1213. The IJ found that the Government met this burden by offering proof of Kepilino's conviction under H.R.S. section 712-1200. Accordingly, the burden of production shifted back to Kepilino for her to prove "clearly and beyond doubt" that she is entitled to be admitted and is not inadmissible under section 212(a)(2)(D)(i). *Toro-Romero v. Ashcroft*, 382 F.3d 930, 936 (9th Cir. 2004). For the reasons set forth below, we find that the evidence shows "clearly and beyond doubt" that Kepilino is not inadmissible under section 212(a)(2)(D)(i).

## IV. Kepilino's Prostitution Conviction Under H.R.S. Section 712-1200 Is Not a Removable Offense Under Section 212(a)(2)(D)(i) of the INA

Section 212(a)(2)(D)(i) of the INA renders inadmissible any alien who "is coming to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjustment of status." 8 U.S.C.

§ 1182(a)(2)(D)(i). Hawaii law provides that a "person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee." Haw. Rev. Stat. § 712-1200(1). The statute further states that "[a]s used in subsection (1), 'sexual conduct' means 'sexual penetration,' 'deviate sexual intercourse,' or 'sexual contact,' as those terms are defined in section 707-700." Haw. Rev. Stat. § 712-1200(2). Section 707-700 provides additional definitions:

> "Deviate sexual intercourse" means any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the mouth, anus, or sex organs of the other.

> "Sexual contact" means any touching, other than acts of "sexual penetration," of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

> "Sexual penetration" means:

> (1)  Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required; or

> (2)  Cunnilingus or anilingus, whether or not actual penetration has occurred.

Haw. Rev. Stat. § 707-700.

Kepilino contends that her state conviction for prostitution does not render her inadmissible under section 212(a)(2)(D)(i)

because Hawaii's definition of prostitution "has gone far beyond the well-accepted and understood meaning of prostitution." She does not challenge the "fee" component of section 712-1200 but asserts that the definition of "prostitution" should be limited to acts including "sexual penetration." Kepilino contends that section 712-1200 is impermissibly broad because it criminalizes not only intercourse, fellatio, and masturbation, but also the touching of another's intimate parts, even if the touching occurs through clothing.

## A.   Categorical Approach

**[1]** To determine whether a specific crime falls within a particular category of inadmissible predicate crimes, we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 576 (1990), and focus narrowly on the elements of the crime as defined by its statutory language. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005); *United States v. M.C.E.*, 232 F.3d 1252, 1255 (9th Cir. 2000). In so doing, we "look solely to the statutory definition of the crime, not to the name given to the offense or to the underlying circumstances of the predicate conviction." *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999). Thus, the issue here is not whether Kepilino's actual conduct constituted prostitution but, rather, whether the full range of conduct encompassed by the Hawaii statute would qualify as a crime of prostitution for purposes of the INA. *See Cuevas-Gaspar*, 430 F.3d at 1018.

**[2]** Both parties agree that the INA does not define the term "prostitution." However, the State Department has defined "prostitution" specifically for the purposes of section 212(a)(2)(D)(i) as "engaging in promiscuous *sexual intercourse* for hire." 22 C.F.R. § 40.24(b) (emphasis added); *see also* 3A C.J.S. *Aliens* § 1166 (2005). Because section 712-1200 criminalizes conduct that does not necessarily involve sexual intercourse — including the mere touching of the intimate parts of another through clothing — we find that

Hawaii's statute is much broader than the Code of Federal Regulations definition ("C.F.R.").[2]

Further, as mentioned above, the C.F.R. defines "prostitution" as "*engaging* in promiscuous sexual intercourse for hire." 22 C.F.R. § 40.24 (b) (emphasis added). The C.F.R. definition further states that

> finding that an alien has "engaged" in prostitution must be based on elements of *continuity* and *regularity*, indicating a *pattern* of behavior or deliberate course of conduct entered into primarily for financial gain or for other considerations of material value as distinguished from the commission of casual or isolated acts.

---

[2]When reviewing an agency's construction of a statute, we apply the two-part test set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). First, we must examine the statute itself to determine whether Congress has spoken directly to the precise question. *See id.* at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If not, and the statute is ambiguous as to the precise question at issue, "we defer at step two to the agency's interpretation so long as the construction is 'a reasonable policy choice for the agency to make.' " *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2702-12 (2005) (quoting *Chevron*, 467 U.S. at 845).

Because the text of section 212(a)(2)(D)(i) does not provide a definition for "prostitution," and therefore Congress's intent is ambiguous, we must look to agency interpretation for a reasonable interpretation. *Id.* Here, the definition of "prostitution," which applies specifically to section 212(a)(2)(D), is found in the C.F.R. *See* 22 C.F.R. § 40.24(a). Interpretations of statutes in the C.F.R. are "promulgated in accordance with the procedural requirements imposed by Congress for the creation of binding regulations," are "intended to be binding," and are entitled to *Chevron* deference by a reviewing court. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000). Because the C.F.R.'s definition was "promulgated in accordance with procedural requirements imposed by Congress," *id.*, and appears to be a reasonable interpretation, we accord deference to the C.F.R.'s definition of "prostitution" and our *Chevron* analysis ends.

22 C.F.R. § 40.24(b) (emphasis added); *see also* 3A C.J.S. *Aliens* § 1166 (2005). In this case, Kepilino was charged and convicted of one count of prostitution under Hawaii law, which criminalizes — stated most simply — "sexual conduct" for a fee. Haw. Rev. Stat. § 712-1200(1). Because Hawaii's statute criminalizes "any" act of sexual conduct and does not require that the alien engaged in a pattern of sexual conduct, Hawaii's statute is much broader than the C.F.R.'s definition.

**[3]** Hawaii's statute is overly broad because it criminalizes an isolated act of conduct that does not necessarily involve sexual intercourse. Therefore, Kepilino's offense does not constitute "prostitution" under the categorical approach.

## B.  Modified Categorical Approach

**[4]** Because the statute of conviction is categorically broader than the State Department's definition of the crime, we next employ the modified categorical approach, which requires that we "look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (internal quotation omitted); *cf. Carty v. Ashcroft*, 395 F.3d 1081, 1084 (9th Cir. 2005) ("When a statute is divisible into several crimes, some of which may involve moral turpitude and some not, it is appropriate to examine the 'record of conviction' to determine which part applies to the defendant.").

**[5]** We do not, however, "look beyond the record of conviction itself to the particular facts underlying the conviction." *Tokatly*, 371 F.3d at 620 (citing *Taylor*, 495 U.S. at 600). The Supreme Court has clarified that, in determining whether a conviction establishes that a defendant was convicted of the generally defined offense, our inquiry is limited "to the terms of the charging document, the terms of a plea agreement or

transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005) (reaffirming that, under the modified categorical approach, the court can only consider facts that are *necessarily* admitted in the plea); *see also United States v. Lopez-Montanez*, 421 F.3d 926, 931 (9th Cir. 2005). The record must "unequivocally" establish that the defendant was convicted of the crime. *United States v. Smith*, 390 F.3d 661, 664 (9th Cir. 2004). Therefore, we must determine whether the record of conviction demonstrates that Kepilino was convicted of the general elements that constitute prostitution under the definition contained in 22 C.F.R. § 40.24(b).

The record shows that Kepilino was convicted after she pleaded no contest to one charge of prostitution. The administrative record contains the following documents: (1) a copy of the criminal trial court's calendar for March 2, 1999; and (2) Kepilino's public "Rap" sheet. Each of these fall within the record of conviction.

**[6]** The first document states that Kepilino waived a reading of the charge and pleaded no contest. She was adjudged guilty and fined $500. The second document contains similar information. It states that Kepilino was found guilty of prostitution — a petty misdemeanor — on March 2, 1999, and given a $500 fine. Neither document contains *any* detail of the "sexual conduct" or *any* usable information about the factual basis for Kepilino's conviction.

**[7]** In addition, because there are no factual details about Kepilino's conviction in the record of conviction, the record does not establish that Kepilino was convicted of engaging in a regular pattern of prostitution as defined by 22 C.F.R. § 40.24(b). As far as we can tell, Kepilino does not have a history of prostitution convictions, and neither party contends that Kepilino engaged in anything more than one isolated act.

**[8]** The record of conviction does not establish the factual basis for Kepilino's no contest plea or support a finding that Kepilino "engaged" in prostitution as defined by the code. Consequently, neither document establishes that Kepilino's conduct falls within the C.F.R.'s definition of "prostitution." Accordingly, we find that Kepilino's offense was not a crime of prostitution under the modified categorical approach.

## V.   Conclusion

For the reasons set forth above, we grant the petition and reverse the IJ's finding that Kepilino's prostitution conviction under H.R.S. section 712-1200 rendered her inadmissible under section 212(a)(2)(D)(i) of the INA.

PETITION GRANTED.